Carr X. JOHNSON, Petitioner-Appellant,

v.

Joseph H. HAVENER,
Respondent-Appellee.

No. 75–1433.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 10, 1976.

Decided April 30, 1976.

Rehearing Denied May 28, 1976.

Carr X. Johnson, Marion, Ohio, Paul A. Mancino, Jr., Cleveland, Ohio (Court-appointed CJA), for petitioner-appellant.

William J. Brown, Atty. Gen. of Ohio, Robert D. Doane, Columbus, Ohio, for respondent-appellee.

Before PHILLIPS, Chief Judge, EDWARDS and MILLER,* Circuit Judges.

EDWARDS, Circuit Judge.

Appellant seeks reversal of the judgment of the United States District Court for the Northern District of Ohio, Eastern Division, which, without appointing counsel and without hearing, but after reviewing the state court record, denied his petition for writ of habeas corpus.

Appellant had previously been convicted of first degree murder and sentenced to life imprisonment in the robbery-murder of an insurance salesman in Cleveland, Ohio, in 1972. The undisputed facts in the state court trial record show that the insurance salesman had been assigned to call at appellant's apartment on August 15, 1972, after a phone call from appellant requesting an agent. The agent's charred body, with two bullet holes and with the legs severed from the torso, was found in a swamp in his own burned automobile. Appellant was arrested

* Judge Miller concurred in this opinion prior to his death on April 12, 1976.

two days later in a Cleveland hospital (where he had been admitted late in the afternoon of the day of the murder) suffering from first- and second-degree burns over 30% of his body.

The police officers who questioned appellant on August 17, 1972, did so after securing the permission of the attending physician. At the state court hearing upon appellant's motion to suppress evidence of his confession, the attending physician testified that appellant was admitted to the hospital at 6:32 on the evening of August 15, 1972, and was "suffering from first- and second-degree burns of the face, neck and both upper limbs and the thighs, an area which involved approximately 30 percent of the surface area, by estimation."

Asked to describe first- and second-degree burns, he testified: "A first-degree burn is one which merely produces a redness of the skin, similar to sunburn. . . . A second-degree burn produces some destruction of the superficial layers of the skin, like blistering; what is commonly known as blistering . . . . [A third-degree burn] [w]ould be total destruction of the skin and underlying tissue."

The attending physician testified to appellant's medication which included morphine sulphate and Demerol on the evening of admission (the 15th) and Demerol on the 16th and 17th. He testified that appellant had made normal progress up to the morning of the 17th when Detective Bolton of the Cleveland Police Department asked permission to see appellant. As to this request the doctor testified:

Q And is it your statement then, that he asked you for permission to see Carr Johnson?

A Correct.

Q And what was your reaction to that? What was your answer to that?

A I was asked if he was in a fit condition to be questioned. I thought he was and I indicated to that effect.

Q In other words, you gave him permission to see Carr Johnson?

A Correct.

Q Was it your opinion at that time that he was capable of being questioned and he was rational?

A I think he was.

Q Had you had any conversation with him on this day in question, August 17th, '72?

A With the patient?

Q Yes.

A When I saw him in the morning, he was coherent and he was aware of his surroundings. Didn't appear disoriented in any way that I could ascertain.

Subsequently, three police officers testified to administering full Miranda warnings to appellant in his hospital bed. Each likewise testified to the general effect that appellant was alert and articulate and answered questions responsively. Although, according to the officers, appellant originally denied involvement in the crime, he subsequently gave Detective Bolton a complete statement of the events on the 15th, which statement was taken down by typewriter by an officer summoned from Police Headquarters and acknowledged by an "X" and his initials by appellant. The officers testified that appellant made no request for counsel which he had been told he had a right to in the course of the Miranda warnings.

Appellant himself testified at the hearing on motion to suppress evidence. He claimed or acknowledged specific memory of a number of events, including his refusal to see his aunt who came to the hospital while the officers were present, and asserted that he had asked for a lawyer several times during the course of the interrogation. His testimony was to the general effect that he was suffering from pain and the effects of the drugs administered to him for pain, and that he didn't know what he was saying.

The state trial court judge refused to suppress the typed confession, holding that it had been voluntarily provided, in accordance with the Fourteenth Amendment and the standards of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Before the United States District Court appellant presented only two issues in his habeas corpus petition. First, he claimed that the trial court erred in admitting petitioner's confession into evidence, knowing the petitioner was under the influence of drugs. Secondly, he contended that the verdict was against the manifest weight of the evidence. The District Court Judge correctly held that the claim pertaining to the weight of the evidence was not a federal constitutional claim. In any event defendant testified at the trial and fully described his conduct in a fashion which supported the jury's verdict of guilty beyond reasonable doubt.

■ Our review of the state trial court record, which the District Judge relied upon in denying the petition for writ of habeas corpus without hearing, indicates to us that the state trial court judge had conducted a full and fair hearing upon the issue of voluntariness of the confession and that the District Judge's denial of the petition for writ of habeas corpus was based upon competent evidence in the state trial court record of appellant's full knowledge of what was going on.

On cross-examination appellant testified as follows:

Q Do you recall discussing suicide with Officer Bolton?

A Yes, sir.

Q Do you remember that?

A Yes, sir. I remember telling him I wanted to jump out the window.

Q You do remember your telling him that?

A Yes. That is one of the reason for trying to get him out.

Q Threatening suicide?

A I thought maybe he would go, leave me alone. To me he seemed harassment than anything.

Q In State's Exhibit 1A, where you have an X—do you know if you wrote the X?

A Yes, sir.

Q "Do you care to make a statement?" You wrote an X?

A Yes, sir.

Q There is a signature down there, "CWJ," is that yours?

A Yes, sir, I think so.

■ On appeal to this court we recognize, of course, that appellant's counsel has sought to expand the issues far beyond the two presented in the District Court. Our appellate function, however, is clearly limited to reviewing that which had been presented to the District Judge.

In affirming the denial of the petition for writ of habeas corpus in this case, we do not pass upon any issues except those which were before the District Judge in appellant's pro se habeas corpus petition.

On appeal appellant's counsel contends that we must hold as a matter of law that the state court judge employed an unconstitutional formulation of the burden of proof in considering and denying the motion to suppress. It is his contention that in Syllabus 3 of *State v. Kassow,* 28 Ohio St.2d 141, 277 N.E.2d 435 (1971), *vacated on other grounds,* 408 U.S. 939, 92 S.Ct. 2876, 33 L.Ed.2d 762 (1972), the Supreme Court of Ohio established as law the following: "Upon the trial of the issues raised by a pre-trial motion to suppress a statement claiming that the statement was compelled by mistreatment, threat of disadvantage, or hope of reward, the burden is upon the accused to prove his claim in that respect. . . ." This court has recently dealt with the question of burden of proof in relation to federal constitutional claims at hearings on motions to suppress evidence. *United States v. Tommie Murrie, Jr.,* 534 F.2d 695 (6th Cir. 1976).

In the *Murrie* case in the context of a Fourth Amendment motion to suppress we said:

This court has previously held that on a motion to suppress evidence the burden of establishing a prima facie case is upon the movant, but that when such a case has been made, the burden of proof shifts to the government. * * *

Clearly where police officers in breaking into a home in the nighttime have violated a constitutional standard, the

burden of proof of exigent or exceptional circumstances to justify such a deviation from the Fourth Amendment is upon those who are seeking the advantage of exception.

*United States v. Tommie Murrie, Jr., supra* at 698.

While we believe that the just quoted standard would be equally applicable to the issue in this case, we find no reason to hold that it has been violated.

Appellant here does not claim "mistreatment, threat of disadvantage or hope of reward" induced his statement. And if Syllabus 3 in the *Kassow* case is in conflict with our view as expressed above from the *Murrie* case, it is Syllabus 4 from *Kassow* which applies to the issues of this case. Syllabus 4 is completely consistent with our view and it reads:

4. Prior to the use of an in-custodial statement, given in response to police interrogation, against the accused in its case in chief, the state has the burden of establishing that the accused knowingly, intelligently and voluntarily waived his Fifth Amendment right not to make the statement. *Miranda v. Arizona* (1966), 384 U.S. 436, [86 S.Ct. 1602, 16 L.Ed.2d 694].

*State v. Kassow, supra* at 141, 277 N.E.2d at 438.

*See also State v. Edgell*, 30 Ohio St.2d 103, 283 N.E.2d 145 (1972) (Syllabus 1); *State v. Jones,* 37 Ohio St.2d 21, 25, 306 N.E.2d 409, 411 (1974).

■ While the *Kassow* issue was not presented to the District Court, we believe a claim of lack of voluntariness was presented.[1] There is, however, no indication that the state trial court judge placed the burden of proof upon appellant, and the record of the suppression hearing is ample to have allowed the District Judge to conclude that the state had properly borne its burden of proof as to the voluntariness of appellant's statement, and his physical and mental competence to give it.

The judgment of the District Court is affirmed without prejudice to appellant's presentation in a new habeas petition of issues not presented in the instant case.

---

1. While Syllabus 4 deals specifically with the voluntariness of waiver of *Miranda* rights and not the voluntariness of the confession itself, in this case the confession followed shortly after the Miranda warnings. With no significant intervening circumstances we regard the voluntariness of the waiver of rights as probative of the voluntariness of the confession itself.