William **CHANDLER**,
Petitioner-Appellant,

v.

Otie **JONES** and Attorney General of
the State of Tennessee,
Respondents-Appellees.

No. 86–5194.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 20, 1987.

Decided March 13, 1987.

774

Kenneth A. Miller (argued) Knoxville, Tenn. (Court-appointed), for petitioner-appellant.

W.J. Michael Cody, Atty. Gen. of Tennessee, Nashville, Tenn., Raymond S. Leathers (argued), for respondents-appellees.

Before ENGEL and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Petitioner William Herman Chandler appeals from the judgment of the district court denying his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Chandler challenges on several grounds his convictions under Tennessee law of burglary and of being an habitual criminal. Chandler alleges that: (1) Tennessee's Habitual Criminals Act, Tenn. Code Ann. §§ 39–1–801 *et seq.*, is unconstitutional on its face because it violates the Equal Protection Clause of the Fourteenth Amendment; (2) the Habitual Criminals Act was unconstitutionally applied to him because it resulted in a disproportionately harsh sentence in violation of the Eighth Amendment; and (3) he was denied effective assistance of counsel in violation of the Sixth Amendment. For the reasons which follow, we affirm the denial of the writ.

### I.

Chandler was charged along with two others in connection with the attempted burglary of a Convenient Food Mart in the early morning hours of December 13, 1979. An eyewitness who lived across the street from the store testified that at approximately 3:00 a.m. he was awakened by a burglar alarm. He looked out his window and saw a man, whom he identified as Chandler, running from the store with a bag in his hand. The man got into a red car which then left for approximately thirty minutes. That car was registered to Chandler. When the car returned, two men got out of it. One walked to the street corner while the other, Chandler, unlocked the front door of the store and went in. The police then arrived, arrested Chandler as he came out of the store, and arrested the man on the corner, Robert Riley. The witness then told the police what he had seen and went up to the red car where he saw the police removing items from its trunk. The witness also saw a blond woman, whom he later identified as Mrs. Riley, sitting in the front seat. The state subsequently brought charges against the Rileys and Chandler.

There was originally to be a joint trial of all three defendants. However, Chandler's attorney, Robert Levine, filed a motion for severance which was granted by the trial court.

Prior to Chandler's trial, the Rileys executed written statements in Levine's presence exculpating Chandler from any wrongdoing. It was Levine's intention to have the Rileys testify at Chandler's trial in a manner consistent with those statements. The Rileys subsequently recanted their written statements, however, during plea negotiations with the Assistant District Attorney General, W.H. Crabtree (hereinafter District Attorney Crabtree). The Rileys confessed to District Attorney Crabtree that both they and Chandler were involved in the attempted burglary. Even though they incriminated Chandler, the Rileys did not want to testify against him at trial. District Attorney Crabtree informed the Rileys that he was not interested in having them testify; nevertheless, the Rileys along with their attorney decided to invoke their Fifth Amendment right against self-incrimination if they were called upon to testify, so that they would incriminate neither Chandler nor themselves. The morning of Chandler's trial,

District Attorney Crabtree notified Levine of the Rileys' intentions.

Levine represented Chandler at his trial, which took place in July of 1980. At that time, Levine was in charge of the Legal Clinic at the University of Tennessee Law School. A student assistant who was working at the Clinic, Judith Stolfo, assisted Levine at the trial. After Levine learned from Crabtree that the Rileys intended to invoke the Fifth Amendment, he still planned to call them as witnesses and use leading questions to get Chandler's theory of defense on the record. Chandler's defense was that he had loaned his car to the Rileys and was looking for them when he saw his car near the Convenient store. Levine did not prepare Chandler to testify on his own behalf.

At trial, Levine did in fact call Robert Riley as a witness. Once on the stand, Riley invoked the protection of the Fifth Amendment in response to each inquiry by Levine. Riley persisted in pleading the Fifth Amendment, even though the District Attorney offered Riley immunity from using any statements against him and even though the trial court ordered Riley to answer. Furthermore, District Attorney Crabtree successfully objected on numerous occasions to the leading nature of Levine's questions. Thus, Levine was unable to present Chandler's theory of defense as planned. Levine did not question Riley about his prior exculpatory statement, nor did Levine offer the statement for admission as a prior inconsistent statement.

When the planned tactic of using Riley's testimony failed, Levine had a brief meeting with his student assistant, Judith Stolfo, and Chandler. The meeting, which has since been described as hectic, culminated in the decision to have Chandler testify, even though he had not been prepared to do so.[1]

Chandler testified that he had loaned his car to Bob and Sandra Riley the day before the attempted burglary but that Bob had failed to pick Chandler up at his night job as they had previously arranged. Chandler then called his brother to pick him up, but his brother could not drive him home either. Consequently, he started walking. He went to the Rileys' home but found no one there so he started walking towards his own house. He then saw his car parked near the Convenient store and also saw Bob Riley coming out of the store. He first spoke with Riley and then went into the store to get a Coca-Cola. The store door was unlocked and the Coca-Cola machine was open. At that time the police, along with a police dog, arrived upon the scene and arrested Chandler.

During Chandler's testimony, District Attorney Crabtree repeatedly and often successfully objected to the leading nature of Levine's questions. At one point, District Attorney Crabtree complained that Levine had not asked one question which was not leading, to which Levine responded that he did not know how to ask a nonleading question. The court stated that it agreed with the District Attorney and that it had sustained, but had "then let [Levine] go." Because of the court's lenience, Chandler's testimony was eventually received in full, as the court permitted Chandler's responses to Levine's leading questions. Part of Chandler's direct testimony also focused on his previous criminal record.

The jury unanimously found Chandler guilty of burglary in the third degree. The jury set Chandler's punishment at a minimum of six and a maximum of ten years incarceration. This conviction triggered the application of Tennessee's Habitual Criminals Act, Tenn. Code Ann. §§ 39-1-801 et seq. Accordingly, a separate proceeding was held to determine whether

1. Levine subsequently stated in an affidavit that he remembered advising Chandler not to testify, although he did advise Chandler that if he testified and the jury believed him, it would help him. Chandler testified at an evidentiary hearing held by the district court that Levine instructed him that he had no choice but to testify. Chandler also remembered that Stolfo had disagreed with Levine. Stolfo testified at the same hearing that she did not remember specific comments made during the conversation, but she remembered that the subject was whether Chandler would testify or not.

Chandler was guilty of being an habitual criminal under Tennessee law.[2]

It was during the habitual criminal phase of the proceedings that Levine first brought to the trial court's attention the Rileys' prior written statements. The court initially allowed Levine to offer them into evidence at that late date, but when District Attorney Crabtree stated that he was going to present witnesses to rebut those statements, Levine withdrew them from the record. At the close of the habitual criminal proceeding, Chandler was found guilty of being an habitual criminal and was sentenced to life imprisonment.

The Tennessee Court of Criminal Appeals affirmed Chandler's convictions on October 14, 1981. Chandler then applied for permission to appeal to the Tennessee Supreme Court, which denied his application on January 25, 1982. Chandler next filed a petition for post-conviction relief in the Criminal Court for Knox County, claiming that he was denied effective trial counsel and that his life sentence violated the Eighth Amendment.

That court held extensive hearings on Chandler's petition at which Chandler, Stolfo, and District Attorney Crabtree all testified. Also, affidavits by Levine were submitted into the record in which Levine stated his belief that he was "ineffective at trial in dealing with several issues that arose." On April 28, 1983, the court rendered its opinion from the bench, denying Chandler's post-conviction petition. Although it observed that Chandler's ineffectiveness claim presented a close question, the court was convinced that because of the state's strong case Chandler would have been convicted of being involved in the burglary and being an habitual criminal regardless of how his case was tried. The court observed that Chandler was able to present his theory of defense in great detail; the jury simply failed to believe him in light of the evidence against him. The

court's denial of Chandler's petition was affirmed on appeal.

On December 28, 1984, Chandler filed the instant habeas petition with the district court, raising four grounds for relief. He alleged that he had not received effective assistance of counsel, that the Tennessee Habitual Criminals Act was unconstitutionally applied to him insofar as it resulted in a life sentence, that he was denied due process because the entry of the Rileys' guilty pleas was delayed, and that he was denied due process because the state improperly commented on Robert Riley's assertion of his Fifth Amendment rights.

On July 2, 1985, the district court denied Chandler's petition except for the claim of ineffective counsel; the court ordered a hearing with regard to that claim. The hearing was held on December 16, 1985, at which Chandler, Stolfo and District Attorney Crabtree again all testified. Although Stolfo acknowledged that the state had a very strong case against Chandler, she nevertheless believed that Chandler did not receive effective assistance of counsel at his trial. District Attorney Crabtree emphasized the strength of the state's case and concluded that Levine's representation met the standards for determining effective assistance of counsel. At various points during the hearing, the district court judge commented that he thought the trial record was "unbelievable" and that anyone who tried a case worse than Chandler's should "have their license [to practice] taken away."

On January 9, 1986, the district court filed its memorandum opinion and order rejecting Chandler's ineffectiveness claim and denying Chandler's habeas petition. The court found that Levine's trial performance was deficient with respect to (1) his failure to prepare Chandler for examination, (2) his inability to ask nonleading questions, and (3) his strategy decision to

---

**2.** Tennessee's Habitual Criminals Act does not create an independent crime, but defines a status under which an enhanced punishment may be imposed for the triggering offense. *Harrison v. State*, 217 Tenn. 31, 394 S.W.2d 713, 714 (1965). The determination of whether an individual will be declared an habitual criminal is made in a separate-jury proceeding immediately following the triggering conviction of the principal offense. *Evans v. State*, 571 S.W.2d 283, 285 (Tenn.1978).

call Riley as a witness even though he expected Riley to invoke the Fifth Amendment. The court did not, however, find prejudice arising from Levine's deficient performance. Accordingly, the court concluded that Chandler was not denied the effective assistance of counsel guaranteed by the Sixth Amendment.

Chandler then brought this timely appeal.

## II.

As his first issue on appeal, Chandler argues that Tennessee's Habitual Criminals Act (HCA), Tenn.Code Ann. §§ 39–1–801, *et seq.*, is unconstitutional on its face because it denies citizens the equal protection of the laws in violation of the Fourteenth Amendment. The HCA defines habitual criminals as "persons who have been convicted three times of felonies, either within Tennessee or under the laws of any other state or government, two of which must be felonies enumerated in the defining statute...." *Duffel v. Dutton,* 785 F.2d 131, 132 (6th Cir.1986) (citing Tenn. Code Ann. § 39–1–801, formerly Tenn.Code Ann. § 40–2801). Included among the enumerated offenses are those classified as "infamous" under the predecessor statute to Tenn.Code Ann. § 40–20–112.[3] Offenses classified as infamous include burglary, larceny, robbery, and felonious breaking into a business house. *See* Compiler's Notes to Tenn.Code Ann. § 40–20–112. Chandler finds inequities in the choices made by the Tennessee legislature in designating some crimes as infamous but not others. In particular, Chandler complains that embezzlement, which he characterizes as the "white collar" equivalent to larceny, is not designated as an infamous crime even though it is a felony and carries with it the same potential punishment as larceny, a

crime classified as infamous. In Chandler's view, because § 39–1–801 distinguishes between larceny and embezzlement, it is violative of the Equal Protection Clause under the analysis of *Skinner v. Oklahoma,* 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942).

We do not reach the merits of this issue since it is not properly before this court. Chandler did not assert this claim in his petition for the writ of habeas corpus. Chandler attacked the constitutionality of the HCA solely on the ground that the statute, as applied to him, violated the Eighth Amendment's prohibition of cruel and unusual punishment. The district court therefore examined only this constitutional challenge; it did not address the quite different question of whether the statute on its face violates the Equal Protection Clause.

 It is a well-established principle of appellate review that appellate courts do not address claims not properly presented below. *See Lyle v. Koehler,* 720 F.2d 426, 428–29 (6th Cir.1983); *Hinsley v. Rose,* 705 F.2d 863, 865 (6th Cir.1983); *Brown v. Marshall,* 704 F.2d 333, 334 (6th Cir.) (per curiam), *cert. denied,* 464 U.S. 835, 104 S.Ct. 120, 78 L.Ed.2d 119 (1983); *Caldwell v. United States,* 651 F.2d 429, 434 (6th Cir.), *cert. denied,* 454 U.S. 904, 102 S.Ct. 412, 70 L.Ed.2d 222 (1981); *Johnson v. Havener,* 534 F.2d 1232, 1234 (6th Cir.), *cert. denied,* 429 U.S. 889, 97 S.Ct. 245, 50 L.Ed.2d 171 (1976). In each of the foregoing cases, this court relied on this principle in rejecting attempts by habeas petitioners to assert new claims on appeal not presented in their petition or proceedings below. The principle is applicable here and consequently precludes Chandler from raising his Equal Protection Clause argument for the first time on appeal.[4]

---

3. Section 40–20–112 states that "for the purposes of § 39–1–801 et seq., references therein to this section shall only refer to those crimes which were designated as infamous under this code provision as it existed prior to May 18, 1981."

4. Furthermore, were this claim properly before the court, we would be confronted with the rule set forth in *Rose v. Lundy,* 450 U.S. 910, 101 S.Ct. 1346, 67 L.Ed.2d 333 (1981), prohibiting

federal review of habeas petitions containing both exhausted and unexhausted claims. Upon review of Chandler's state court briefs, it is apparent that he has not exhausted his state remedies with regard to his Equal Protection Clause claim. Therefore, the claim is not subject to federal review. However, the unexhausted nature of this claim does not create a problem, since the petitioner's attempt to raise the

### III.

Chandler alleges that Tennessee's Habitual Criminals Act was unconstitutionally applied to him because it resulted in a sentence which is disproportionately harsh under the Eighth Amendment. For support, Chandler relies on the analysis contained in *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). The district court found that Chandler's sentence does not violate the Eighth Amendment under the proportionality analysis enunciated in *Solem.*

In *Solem,* the Supreme Court held that the Eighth Amendment requires that "a criminal sentence must be proportionate to the crime for which the defendant has been convicted." 463 U.S. at 290, 103 S.Ct. at 3009. The Court found that courts should consider certain objective factors when reviewing the proportionality of a sentence, "including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for the same crime in other jurisdictions." *Id.* at 292, 103 S.Ct. at 3011. The Court applied this analytical framework to the case before it, and found that the defendant's sentence of life imprisonment without possibility of parole, imposed pursuant to South Dakota's habitual offender statute, was disproportionately harsh and therefore violative of the Eighth Amendment. *Id.* at 303, 103 S.Ct. at 3016.

Of particular importance to the instant appeal was the Court's treatment in *Solem* of its previous decision in *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). In *Rummel,* the Court upheld the constitutionality of the Texas habitual offender statute, specifically finding that the defendant's life sentence with possibility of parole after 12 years, imposed after a third nonviolent felony conviction, did not constitute cruel and unusual punishment under the Eighth Amendment. In so holding, the Court declined to engage in the proportionality analysis which had been utilized in capital punishment cases. 445 U.S. at 272–73, 100 S.Ct. at 1138. The Court instead deemed it inadvisable for appellate courts to review the appropriateness of sentences of imprisonment.

While the principles enunciated in *Solem* modified the holding of *Rummel,* the *Solem* court expressly stated that it was not overturning *Rummel;* rather, the Court found that the circumstances in *Solem* which called for the proportionality analysis were "clearly distinguishable" from those in *Rummel,* 463 U.S. at 303–04 n. 32, 103 S.Ct. at 3016–17 n. 32. The Court maintained that *Rummel* was still controlling in "similar factual situation[s]." *Id.* The Court also warned that substantial deference still had to be accorded legislatures and sentencing courts, and acknowledged that "a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate." *Id.* at 290 n. 16, 103 S.Ct. at 3009, n. 16.

Several general principles can be drawn from the Court's pronouncements in *Rummel* and *Solem.* The Court has undisputedly approved application of an objective proportionality analysis in reviewing the constitutionality of a sentence under the Eighth Amendment. However, an extensive proportionality analysis is not required in each habeas case challenging a sentence as being disproportionately harsh. In cases factually similar to *Rummel, Rummel* still provides the rule, and a proportionality challenge to a particular sentence may be rejected without application of the *Solem* objective criteria test. *See Moreno v. Estelle,* 717 F.2d 171, 180–81 (5th Cir. 1983), *cert. denied,* 466 U.S. 975, 104 S.Ct. 2353, 80 L.Ed.2d 826 (1984); *see also Holley v. Smith,* 792 F.2d 1046, 1049 (11th

---

claim on appeal constitutes an improper attempt to amend his petition on appeal; it does not present the court with a "mixed" petition containing both exhausted and unexhausted claims. The petitioner's improper attempt to amend his petition "does not comport with those rules respecting the necessary division of functions between district and appellate courts, nor with the principles underlying the writ of habeas corpus." *Brown,* 704 F.2d at 335. Since we find that Chandler's Equal Protection Clause claim is not properly before this court, we therefore render no opinion concerning the merits of the claim.

Cir.1986) (adopting magistrate's report which had rejected contention that *Solem* mandates application of the objective criteria test in all cases attacking the proportionality of a sentence); *United States v. Rhodes*, 779 F.2d 1019, 1028 (4th Cir.1985) (finding the *Solem* proportionality analysis is required "only in those cases involving life sentences without parole"), *cert. denied,* ── U.S. ──, 106 S.Ct. 2916, 91 L.Ed.2d 545 (1986).

▮ The instant case is factually similar to *Rummel* and distinguishable from *Solem;* it is therefore controlled by *Rummel* and not *Solem.* Both Chandler and the defendant in *Rummel* received life sentences under habitual offender statutes after being convicted of a third nonviolent felony. Also, like the defendant in *Rummel,* Chandler is eligible for parole after serving a period of his sentence.[5] Such was not the case in *Solem,* where the defendant was sentenced to life imprisonment without possibility of parole. The Court in *Solem* focused upon this fact in distinguishing *Rummel,* 463 U.S. at 303–04 n. 32, 103 S.Ct. at 3016–17 n. 32. In light of the factual similarities between *Rummel* and this case, we conclude that Chandler's life sentence imposed pursuant to the provisions of the HCA does not constitute cruel and unusual punishment in violation of the Eighth Amendment.[6]

Even assuming that Chandler's sentence should be examined under the objective principles enunciated in *Solem,* we still conclude that his sentence does not violate the Eighth Amendment. The first *Solem* consideration requires a comparison of the gravity of the offense and the harshness of the penalty. While at first blush Chandler's sentence of life imprisonment arising from a conviction of third degree burglary might seem unduly harsh, the sentence must be considered in relation to Tennessee's habitual offenders statute. That is, Chandler's sentence did not arise solely from his burglary conviction but instead was enhanced based on the jury finding that he was an habitual criminal. The Tennessee legislature has determined that persons repeatedly found guilty of committing felonies should be subjected to greater punishment than that which may be prescribed for any one of the individual convictions. As the Supreme Court recognized in *Solem,* we owe great deference to this decision. 463 U.S. at 290 n. 16, 103 S.Ct. at 3009 n. 16. Bearing this deference in mind, we conclude that the life sentence imposed upon Chandler, based on the finding that he is a repeat felony offender, is not unconstitutionally harsh under the circumstances.

We now turn to the second *Solem* criteria, which involves consideration of other sentences imposed in the same jurisdiction. Chandler emphasizes that some other Ten-

5. At first reading it would appear that Tenn. Code Ann. § 39–1–806, which defines the penalty for an habitual criminal, precludes the possibility of parole since it states that punishment for an habitual criminal "shall be fixed at life in the penitentiary, and such offender shall not be eligible to parole, nor shall said sentence be reduced for good behavior, for other cause, or by any means, nor shall the same be suspended." However, Tenn.Code Ann. § 40–28–116(b)(1) expressly provides that any person convicted and sentenced as an habitual criminal under § 39–1–806 may become eligible for parole upon serving not less than 30 years of the life sentence.

Although a Tennessee habitual criminal is only eligible for parole after serving 30 years of his prison sentence, as opposed to the 12 years which had to be served under the Texas recidivist statute at issue in *Rummel,* this difference is not significant for several reasons. First, pursuant to the provisions of Tenn.Code Ann. § 41–21–236, Tennessee habitual criminals are eligi-

ble to receive up to 16 days of good-time credits toward their sentences for each month served. Such credits, if awarded, can reduce the amount of time they must serve before becoming eligible for parole. Therefore, prisoners may actually be eligible for parole in considerably less than 30 years. Second, the time which must be served before becoming eligible for parole under the Texas habitual offender statute has been raised to 20 years, and life sentences imposed under the modified Texas provisions have been upheld on the authority of *Rummel. See Moreno,* 717 F.2d at 179–81.

6. While this issue was recently raised by a habeas petitioner in *Kilby v. Jones,* 809 F.2d 324 (6th Cir.1987), the court did not reach the merits of the issue since the habeas petition had to be dismissed under *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), for failure to fully exhaust state remedies.

nessee defendants have successfully defended against the charge of being an habitual criminal. We are unpersuaded that Chandler's sentence is inconsistent with others in Tennessee merely because some other defendants have not been found by a jury to be habitual criminals, and therefore were not sentenced to life imprisonment. Since burglary is one of the enumerated felonies included under the coverage of the HCA, other Tennessee defendants can and have been sentenced to life imprisonment based on a triggering conviction of burglary. *See, e.g., State v. Wright,* 650 S.W.2d 57, 60 (Tenn.Crim.App.1983) (upholding life sentence imposed under HCA based on triggering offense of burglary); *Hobby v. State,* 499 S.W.2d 956, 959 (Tenn.Crim.App. 1973) (same). Consequently, we conclude that Chandler's enhanced sentence of life imprisonment is not inconsistent with other sentences imposed on similarly situated Tennessee criminals.

We finally consider the third *Solem* criteria—whether Chandler's sentence is disproportionate to sentences in other jurisdictions. We find that it is not. Other states have adopted habitual offender statutes under which Chandler could also have received a life sentence with possibility of parole. For example, the penalty provision of the Texas habitual offender statute, Tex. Penal Code Ann. § 12.42(d) (Vernon 1974), provides for imposition of a life sentence after a third felony conviction.[7] The defendant in *Rummel* was sentenced to life imprisonment with possibility of parole under the predecessor statute to § 12.42(d), after being convicted of obtaining $120.75 by false pretenses. 445 U.S. at 266, 100 S.Ct. at 1135. Also, the Alabama Habitual Felony Offenders Act, Ala. Code § 13A–5–9 (1979), dictates that a three-time convicted felon who commits a nonviolent felony, including third degree burglary, may at the sentencing judge's discretion be sentenced to life imprisonment with possibility of parole. *See Seritt v. Alabama,* 731 F.2d

728, 734–35 (11th Cir.), *cert. denied,* 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 433 (1984). Reference to these similar legislative decisions of other states, to which we owe deference, indicates to this court that Chandler's sentence under Tennessee law is not disproportionate to what might have been imposed in other jurisdictions. Accordingly, having considered the objective criteria of *Solem,* we conclude that Chandler's sentence is not disproportionately harsh and therefore is not prohibited by the Eighth Amendment.

Our holding that Chandler's sentence does not violate the Eighth Amendment is consistent with the conclusions reached by both the federal and state courts which have addressed similar attacks on sentences imposed under Tennessee's habitual offender statute. For example, in *Brymer v. Rose,* 582 F.Supp. 319 (M.D.Tenn.1983), *aff'd,* 732 F.2d 153 (6th Cir.1984) (unpublished order), *cert. denied,* 469 U.S. 1111, 105 S.Ct. 792, 83 L.Ed.2d 785 (1985), a Tennessee federal district court rejected a habeas petitioner's claim that the life sentence he was serving as an habitual criminal constituted cruel and unusual punishment. The Tennessee state courts also have consistently rejected similar claims. *See, e.g., State v. Freeman,* 669 S.W.2d 688, 692–93 (Tenn.Crim.App.1983) (holding that HCA does not violate the Eighth Amendment by imposing cruel and unusual punishment; rejecting argument based on *Solem* decision); *State v. Wright,* 650 S.W.2d 57, 60 (Tenn.Crim.App.1983) (holding that the imposition of a life sentence for the triggering offense of burglary was not excessive and did not constitute cruel and unusual punishment). These decisions are supportive of our conclusion reached today, that Chandler's life sentence imposed pursuant to the HCA is not cruel and unusual punishment and is therefore not violative of the Eighth Amendment.

---

**7.** Section 12.42(d) provides:
If it be shown on the trial of any felony offense that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction he shall be punished by confinement in the Texas Department of Corrections for life.

## IV.

As his last ground for habeas relief, Chandler argues that he was denied the effective assistance of counsel guaranteed him by the Sixth Amendment. In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court enunciated a two-pronged analysis for determining when a convicted defendant's representation is so defective that it requires reversal of the defendant's conviction. The Court stated:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless the defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687, 104 S.Ct. at 2064. In sum, a criminal defendant must show both that his counsel's performance was deficient and that it prejudiced his defense. *Meeks v. Bergen,* 749 F.2d 322, 327 (6th Cir.1984).

As both the state and federal judges who have examined this case have observed, the instant ineffectiveness issue presents a close question in light of Levine's poor trial performance. In fact, the district court found that Levine's representation was deficient in three respects: his failure to prepare Chandler for direct or cross-examination, his inability to conduct proper direct examination (i.e., his consistent improper use of leading questions), and his strategy decision to call Robert Riley as a witness even though Riley was expected to invoke the Fifth Amendment. Because these deficiencies were so serious, the district court concluded that the first element of the *Strickland* test was met. We agree. The trial errors made by Levine were so

numerous, and were so substantial, that Levine simply was not functioning as the "counsel" guaranteed by the Sixth Amendment. Accordingly, the only remaining question is whether Levine's deficiencies prejudiced Chandler. If so, then Chandler's convictions of burglary and of being an habitual criminal must be reversed.

It is not often that this court is faced with this determinative question. In many ineffectiveness cases, the criminal defendant is unable to show that counsel committed such severe errors that they rendered counsel's performance deficient. In those cases, the court can reject the claim of ineffective counsel without reaching the prejudice requirement. Here, however, the question of prejudice is squarely before the court.

In order to establish that Levine's deficient performance prejudiced his defense, Chandler must show "that the decision reached [in his case] would reasonably likely have been different absent [Levine's] errors." *Strickland,* 466 U.S. at 696, 104 S.Ct. at 2069. Chandler focuses his arguments concerning prejudice primarily on the habitual criminal phase of the proceedings and the jury's finding that he is an habitual criminal. As evidence that he should not have been found to be an habitual criminal, Chandler relies on Stolfo's testimony before the district court that some habitual criminal cases can be successfully defended and that persons convicted of being habitual criminals generally have longer records than Chandler's. Chandler also relies on several unreported Knox County habitual criminal cases which were successfully defended by Levine's predecessor at the legal clinic. This evidence, according to Chandler, establishes that there is a reasonable probability that but for Levine's performance the result of the habitual criminal phase of the trial would have been different. Furthermore, Chandler claims that the state has failed to rebut this determinative evidence.

We conclude that Chandler has not met his burden of showing that but for Levine's errors, there is a reasonable probability that the decision would have been differ-

ent; therefore, Chandler has failed to show how Levine's deficient performance prejudiced the defense. The mere fact that some Tennessee defendants have successfully defended habitual criminal cases does not support a finding that it is reasonably likely that the outcome of Chandler's trial would have been different absent Levine's errors. Looking to other, unrelated cases misdirects the focus of the prejudice inquiry. The proper focus is on the impact of the counsel's performance under the circumstances of the case at hand. In examining the effect of Levine's performance, we must first look to the circumstances of Chandler's conviction on the "triggering" charge of burglary, since if Chandler had not been convicted of that charge he would not have been subject to sentence enhancement under the HCA.

Under the circumstances of the instant case, Levine's errors did not have such an adverse effect on Chandler's defense to the charge of burglary that they undermine our confidence in his trial or the outcome of his case. As District Attorney Crabtree testified, the state had a very strong case against Chandler. In fact, Crabtree believed that Chandler did not have a viable defense. This view is buttressed by Stolfo's testimony at Chandler's state post-conviction hearing that Chandler's case was not a "winnable case for the defense." Nevertheless, Chandler was able, through his testimony, to get his complete theory of defense on the record. While District Attorney Crabtree undeniably made frequent objections, which were often sustained, to Levine's improper use of leading questions, the District Attorney did not prevent Chandler from adequately testifying. Instead, the trial court acted leniently and provided Chandler a full and fair opportunity to present his version of the facts to the jury. The jury simply failed to believe him, in light of the state's strong evidence. Under these circumstances, we are unconvinced that Levine's errors deprived Chandler of a fair trial, "a trial whose result is reliable." 466 U.S. at 687, 104 S.Ct. at 2064.

■ With respect to the habitual criminal phase of the proceedings, District Attorney Crabtree testified that habitual criminal cases are the most difficult to defend, and Chandler has never offered any explanation how his habitual criminal case may have been differently defended. The only evidence which Chandler has provided in support of his speculation that Levine's representation adversely affected the outcome of the habitual criminal proceeding are some unrelated Knox County cases in which habitual criminal charges were successfully defended on unspecified grounds. These are insufficient to convince the court that the outcome of Chandler's trial "would reasonably likely have been different" but for Levine's errors. 466 U.S. at 696, 104 S.Ct. at 2069.

In short, Chandler has failed his burden of establishing the prejudice element of the *Strickland* test. Therefore, he has not shown that he was deprived of his Sixth Amendment right to effective counsel.

Having rejected each of Chandler's grounds for habeas relief, we accordingly AFFIRM the judgment of the district court denying Chandler's habeas petition.