47 F.3d 1171
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Melodie INGRAHAM, Defendant-Appellant.
 No. 94-1363.
 United States Court of Appeals, Sixth Circuit.
 Jan. 30, 1995.
 
 Before: MERRITT, Chief Judge; KEITH and BOGGS, Circuit Judges.
 MERRITT, Chief Judge.
 
 
 1
 The defendant, Melodie Ingraham, pled guilty pursuant to a written plea agreement to charges of conspiracy to distribute cocaine and distribution of cocaine. The plea agreement provided that the defendant's sentence would not exceed the mid-point of the guideline range which the court found applicable. The judge sentenced her to a term of 108 months. The judge adopted the position of the Probation Department and held the guideline range was 168-210 months. This was based on the amount of cocaine the judge determined that she distributed. The judge reduced her sentence to 108 months upon the government's recommendation. Ms. Ingraham appeals the length of her sentence. She argues that the judge impermissibly relied upon her immunized Grand Jury testimony when he calculated how much cocaine she distributed. She maintains that the other evidence only supported a sentence range of 87 to 108 months. She asks this Court to remand her case to the district judge so that he can recalculate her sentence without taking into account her Grand Jury testimony. We affirm the district court's sentence and do not reach the merits of Ms. Ingraham's appeal because we find that Ms. Ingraham did not object to use of the testimony at the sentencing hearing. We also find that this case does not present exceptional circumstances or that there will be a miscarriage of justice by not considering this issue.
 
 I.
 
 2
 The Flint, Michigan police, the DEA and the ATF had been conducting investigations into drug trafficking in the Flint, Michigan area. One of the subjects under investigation was T.J. Thompson. Mr. Thompson is the father of five of Ms. Ingraham's children. Ms. Ingraham, the defendant, has lived with him for ten years. On March 10, 1989 Ms. Ingraham was subpoenaed to testify at a Grand Jury hearing. Just prior to her appearance, her lawyer obtained a limited use immunity agreement in exchange for her testimony. Ms. Ingraham gave testimony that eventually led to the indictment of T.J. Thompson on charges of conspiracy to distribute cocaine and cocaine base. T.J. Thompson was subsequently found guilty and was sentenced to a term of 300 months on February 14, 1991. The court found that Mr. Thompson distributed over 500 grams of crack cocaine. The court based this finding largely upon Ms. Ingraham's Grand Jury testimony. Joint Appendix (J.A.) at 85-86. On May 1, 1992 the defendant was indicted on charges of conspiracy to distribute cocaine and distribution of cocaine. She thereafter entered into a plea agreement with the government on October 22, 1993. In the agreement she signed, a clause recited, "the defendant is facing an offense level of 36 (due to the distribution of over 500 grams of crack)." J.A. at 9. The defendant entered her formal guilty plea on November 1, 1993. The court explained to the defendant that she was facing a minimum mandatory sentence of ten years on the conspiracy charge. During the course of the plea hearing, the defendant admitted that she helped T.J. Thompson sell crack cocaine for about a year. J.A. at 69. Her sentencing hearing took place on February 15, 1994. During this hearing, defendant's counsel discussed several objections he had to the presentence report. Specifically, counsel referred to defendant's Grand Jury testimony and disputed that Ms. Ingraham participated in the distribution of as much as 500 grams of crack. J.A. at 102. In fact, defendant's counsel brought a copy of the testimony to the hearing and read from it in an attempt to convince the court of his position. The judge explained to defendant's counsel and defendant that under the guidelines, a defendant need not directly participate in the distribution of all the crack. The guidelines hold the defendant responsible for all the cocaine within the conspiracy that is reasonably foreseeable. The court noted that the defendant acknowledged that she saw as much as 500 grams and that it was, therefore, reasonably foreseeable. Having overruled the defendant's objection, the court sentenced the defendant to 108 months, based on an offense level range of 168-210 months. Ms. Ingraham received a sentence of 108 months because the district judge granted the government's motion for a downward departure from the guideline range. The instant appeal followed.
 
 II.
 
 3
 We note at the outset that "[a] district court's finding as to the amount of drugs a defendant is to be held accountable for is a factual finding which must be accepted by this court unless clearly erroneous." United States v. Paulino, 935 F.2d 739, 756 (6th Cir.1991), cert. denied, 112 S.Ct. 315 (1991), and cert. denied, 112 S.Ct. 323 (1991), and cert. denied, 112 S.Ct. 660 (1991), and cert. denied, 112 S.Ct. 883 (1992). The defendant maintains that the judge based his factual findings, at least in part, on protected testimony. According to the defendant, this panel should instruct the district court to redetermine the quantity of drugs for which the defendant is responsible without taking into account the defendant's statements contained in the Grand Jury testimony. The defendant raises this objection for the first time on appeal. As this Court stated in Chandler v. Jones, "[i]t is well established principle of appellate review that appellate courts do not address claims not properly presented below." 813 F.2d 773, 777 (6th Cir.1987). This principle is a rule of appellate procedure and deviations are permitted in certain, defined instances. This Court has expressed a willingness to take up issues raised for the first time on appeal in exceptional cases or particular circumstances or when there would a plain miscarriage of justice were the Court not to consider the issue. See Pinney Dock & Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1461 (6th Cir.), cert. denied, 488 U.S. 880 (1988). In Taft Broadcasting Co. v. United States, this Court explained that when the issue newly raised on appeal requires a determination of facts, this is generally deemed good reason to refuse consideration of the issue for the first time on appeal. 929 F.2d 240, 244 (6th Cir.1991). Conversely, when an issue presents only a question of law requiring no new or amplified factual determination, this Court on occasion has considered the newly presented issue.
 
 
 4
 The question, whether or not Ms. Ingraham's testimony is protected, calls for more than a legal determination. To resolve this issue we would need to determine whether or not Ms. Ingraham kept her promise, contained in the Use Immunity Agreement, to cooperate fully with the government. The prosecution argues in its brief that had Ms. Ingraham raised her immunity defense below, it would have been properly denied because she breached the terms of her Use Immunity Agreement. The government contends that even if this Court chooses to entertain Ms. Ingraham's appeal, it is completely without merit. The prosecution submits that Ms. Ingraham offered perjured testimony at Mr. Thompson's sentencing hearing. In its brief and in the joint appendix, the prosecution excerpts parts of Mr. Thompson's sentencing hearing. The district judge in that case explicitly found that Ms. Ingraham lied at the sentencing hearing: "Obviously, she's committed perjury. There's no question about that at all, and I would suggest that certainly the U.S. Attorney ought to take look at that situation because people ... shouldn't be permitted to flaunt [sic] their oath before the grand jury or before this Court in the manner in which the witness has done...." J.A. at 86. Because of the state of the record, we decline to make the factual findings necessary to determine whether Ms. Ingraham's testimony was protected. We also find that she waived any such argument by bringing in the testimony herself at the sentencing hearing and not objecting to its use.
 
 
 5
 No plain miscarriage of justice would result from affirming the defendant's conviction. The defendant offers no explanation for her failure to raise the objection below. The sentencing hearing was the appropriate time to challenge the judge's use of the testimony and defense counsel had every opportunity to do so. Defendant clearly understood that this was the appropriate time to lodge any objections because defense counsel did make an unsuccessful objection to the judge's determination, based on the sentencing report, of Ms. Ingraham's involvement in the distribution. As this case presents no exceptional circumstances nor would it result in a plain miscarriage of justice, the sentence of the district court is affirmed.
 
 
 6
 A final, alternative basis exists for affirming Ms. Ingraham's sentence. The record indicates that during the plea hearing the defendant told the district court judge that she helped Mr. Thompson sell crack cocaine for over a year. J.A. at 70. Further, she admitted seeing Mr. Thompson in possession of as much as a kilogram of cocaine at a time. Powder cocaine is used to make crack. The police also seized a rock of crack cocaine from the defendant when they arrested her. In light of this evidence, the district court's determination that Ms. Ingraham was responsible for distributing over 500 grams of crack is not clearly erroneous and must be accepted by this Court.
 
 
 7
 Accordingly, the judgment of the district court is affirmed.