*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0244p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

DARRIN AUSTIN MILLS,

　　　　　　*Petitioner-Appellant,*

　　　*v.*

JOHN CASON, Warden,

　　　　　　*Respondent-Appellee.*

No. 06-2359

_____

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 03-00626—Wendell A. Miles, District Judge.

Argued: December 9, 2008

Decided and Filed: July 10, 2009

Before: DAUGHTREY and ROGERS, Circuit Judges; RESTANI, Judge.[*]

_____

**COUNSEL**

**ARGUED:** Stephan J. Schlegelmilch, BAKER & HOSTETLER LLP, Cleveland, Ohio, for Appellant. Brian O. Neill, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** Stephan J. Schlegelmilch, Thomas D. Warren, BAKER & HOSTETLER LLP, Cleveland, Ohio, for Appellant. Brian O. Neill, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

_____

**OPINION**

_____

　　　MARTHA CRAIG DAUGHTREY, Circuit Judge. The petitioner in this habeas action, Darrin Mills, is a Michigan prison inmate who is serving an effective life

---

　　[*]The Honorable Jane A. Restani, Chief Judge for the United States Court of International Trade, sitting by designation.

1

sentence based on multiple convictions for aggravated assault and conspiracy to commit armed robbery. He now challenges those convictions, claiming a due process violation arising from the state trial court's failure to exclude an in-court identification that Mills contends was tainted because, at the prior trial of a co-defendant, the same witness was shown a photograph of Mills with his name printed underneath it. On direct appeal, the Michigan Court of Appeals affirmed the convictions, holding that the in-court identification of Mills had an independent basis and that it was, therefore, both reliable and admissible. Although the district court's analysis of this same issue on habeas review under 28 U.S.C. § 2254(d) is not entirely clear,[1] in denying habeas relief the district court accepted the report and recommendation of the magistrate judge, whose analysis of the question and conclusions were both thorough and sound. Based on that analysis and on the additional  reasons set out below, we affirm the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Mills and two other men, Jamie MaClam and Chavez Hall, were accused of entering King's Garden Health Spa in Battle Creek, Michigan, and attacking the four women employees inside the facility. They allegedly demanded money and, when none was forthcoming because the days' proceeds had already been deposited in the bank, they went on a rampage, repeatedly beating and kicking the women and striking them with guns. They were also accused of cutting up the women using a knife found on the premises, and Hall was charged with raping one of the women. In an attempt to cover up the horrific nature of the crime, the three assailants set the building on fire before leaving the scene. Badly injured, two of the women managed to get out of the burning building but were forced to leave behind a third victim screaming for help. The two who

---

[1]The district court's summary of the Michigan Court's ruling refers to the state court's ruling that "the pretrial identification was reliable." However, the reliability of the initial identification at an earlier trial was not at issue in the petitioner's later trial. Instead, the dispositive question – in state court, as here – was whether the identification of Mills at the earlier trial of his co-defendant was impermissibly suggestive and, if so, whether it had so tainted the subsequent in-court identification of the petitioner as to make the later identification unreliable, thereby violating the petitioner's due process right to a fair trial.

escaped survived, but the other two died as a result of smoke inhalation and multiple traumatic injuries.

When detectives questioned the surviving women in the hospital two days after the offense, neither victim was able to provide a description of their assailants. The next day, police officers showed Yun Hui Catalfamo, one of the two survivors, an array of six photos. Catalfamo eliminated three photos but was unable to identify anyone from among the remaining three photos, which included a photo of Darrin Mills. During the trial of Chavez Hall, one of Mills's two accomplices, Catalfamo was presented with an exhibit during her testimony that displayed the names and pictures of all three defendants. Prior to his own trial, Mills filed a motion to suppress, contending that Catalfamo should not be permitted to make an in-court identification of him because of her exposure to his photo in the earlier trial. The trial judge denied Mills's motion and permitted Catalfamo to identify Mills as her attacker during her testimony at his trial.

At the conclusion of the trial, a jury convicted Mills of four counts of assault with intent to do great bodily harm less than murder, four counts of assault with intent to rob while armed, and one count of conspiracy to commit armed robbery. The state trial court sentenced Mills to six to ten years of imprisonment for each count of aggravated assault, life in prison for each assault with intent to rob, and 35 to 70 years of imprisonment for conspiracy to commit armed robbery, with all sentences to be served concurrently.

The Michigan Court of Appeals affirmed Mills's convictions, and the Michigan Supreme Court denied leave to appeal. Having exhausted his claims in the state courts, Mills then filed a petition under 28 U.S.C.§ 2254 in federal court, again arguing that because Catalfamo had been unable to identify him positively from the initial photo array and because she had been exposed to his name and photo at the Hall trial, her later in-court identification at the Mills trial was constitutionally tainted and its introduction deprived him of a fair trial. The state essentially conceded that the witness's earlier identification at Hall's trial was suggestive but argued that the Catalfamo's in-court identification at the subsequent trial was reliable, based on evidence establishing an

independent source for that identification.  The district court ruled in the state's favor, and the petitioner now appeals the court's denial of relief.

### *DISCUSSION*

Because Mills's habeas petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996), factual determinations made by the state courts are presumed to be correct.  *See* 28 U.S.C. § 2254(e)(1).  Moreover, only by clear and convincing evidence can a petitioner overcome that statutory presumption.  *See id.*  Under AEDPA, we have authority to grant a writ of habeas corpus for a petitioner convicted in a state court only if the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).  As explained by the United States Supreme Court in *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000):

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Id.* at 411.  Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable."  *Id.* at 409.

In reviewing Mills's conviction, the Michigan Court of Appeals did not set out at length the trial evidence or its analysis of the validity of the in-court identification, but

the court nevertheless concluded that Catalfamo identification testimony was reliable, citing Michigan cases that rely upon the Supreme Court's opinion in *Neil v. Biggers*, 409 U.S. 188 (1972). That case is, of course, the preeminent ruling on the subject of in-court identifications challenged on the basis of suggestive pre-trial identification processes. It is therefore obvious that the state court applied the "correct governing legal principle" to the question before it and, for that reason, habeas relief may be granted only if that governing legal principle was "unreasonably applied" to the facts of this case.

Although the Michigan Court of Appeals did not provide a fully satisfactory application of *Neil v. Biggers* to the facts in this case, the federal magistrate judge certainly did so in the report and recommendation submitted to the district court. Our review of that report reveals a careful consideration of the facts and an appropriate application of the law to those facts, as described below.

The appropriate analysis starts with the premise that the introduction at trial of a pretrial identification so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification" violates the defendant's right to due process. *Thigpen v. Cory*, 804 F.2d 893, 895 (6th Cir. 1986). To determine whether an allegedly suggestive pre-trial identification casts an impermissible taint on a later in-court identification, a court utilizes a two-step evaluation. *See Ledbetter v. Edwards*, 35 F.3d 1062, 1070-71 (6th Cir. 1994). First, the court determines whether the procedure was unduly suggestive. *See id.* If the court determines that the identification was unduly suggestive, it then uses five factors set out in *Neil v. Biggers* to evaluate "the totality of the circumstances to determine whether the identification was nevertheless reliable." *Ledbetter*, 35 F.3d at 1071. Whether the factors demonstrate reliability in the identification process is a question of law. *See Thigpen*, 804 F.2d at 896.

As the first step in the analysis, the magistrate judge assumed, *arguendo,* that any photo identification made by Catalfamo at Hall's trial was impermissibly suggestive. He then recognized and correctly applied the five "*Neil v. Biggers* factors" courts consider in assessing the reliability of a later identification:

> [1] the opportunity of the witness to view the criminal at the time of the crime, [2] the witness' degree of attention, [3] the accuracy of the witness' prior description of the criminal, [4] the level of certainty demonstrated by the witness at the confrontation, and [5] the length of time between the crime and the confrontation.

*Neil v. Biggers*, 409 U.S. at 199. As the magistrate judge pointed out, in judging reliability, a court must consider the totality of the circumstance surrounding the pre-trial identification, weighed against any "corrupting effect of the suggestive identification." *Manson v. Braithwaite*, 432 U.S. 98, 114 (1977).

The report of the magistrate judge includes the following findings as to the reliability of Catalfamo's identification testimony at Mills's trial identifying him as one of the assailants:

> With regard to the first [two] factors, the events giving rise to this case lasted more than an hour. Catalfamo testified that Petitioner and the other men initially took her and the other victims to the kitchen, where they kicked and beat them. Catalfamo had considerable time to observe Petitioner even though the perpetrators eventually separated the women and took them to separate areas. There is no evidence the defendants attempted to conceal their appearances. M[a]Clam eventually took Catalfamo and Broderick to Catalfamo's bedroom, while Petitioner took Cox and Marcelain to another area. Catalfamo's opportunity to see Petitioner was not a casual or passing one. As Catalfamo was the ongoing victim of a heinous and brutal crime, her degree of attention was undoubtedly focused on what was going to happen to her and was unquestionably high. The third factor is more difficult to assess. Two days after the events, Catalfamo was unable to provide a description of the suspects to police. The reason for this is not entirely clear, and it could have been due to trauma or fear. The victim was still in a lot of pain, and only in fair condition. Indeed, Catalfamo and the other girl would not even tell the police the full names of the two deceased victims. Also, Catalfamo was unable to identify defendant with certainty in a photo lineup, although when presented with an array of six photos three days after the events, she was able to narrow it down to three possible individuals, which included the Petitioner. The final factor was the length of time between the initial observation and the challenged identification. In this case, the initial observation occurred on January 26 or 27, 1999 and the in-court identification was made nine months later on October 23, 1999. A nine month delay between the crime and the confrontation also weighs against a finding of reliability. *See Biggers*, 409 U.S. at 201 (lapse of seven months between crime and confrontation

"would be a seriously negative factor in most cases"). (References to the trial transcript omitted.)

Based on this analysis, the magistrate judge concluded that "it was not unreasonable for the Michigan Court of Appeals to find that Catalfamo's in-court identification was sufficiently reliable to protect Petitioner's due process rights," when reviewed under the AEDPA standard. The district court subsequently adopted the magistrate judge's recommendation that relief be denied on this claim.[2] We agree that, given the totality of the circumstances in this case, the state court's treatment of the issue was objectively reasonable and that habeas relief was properly denied in this case.

## *CONCLUSION*

For the reasons set out above, we AFFIRM the judgment of the district court.

---

[2]Both the magistrate judge and the district court also concluded that even if there were constitutional error in the introduction of Catalfamo's testimony, the error could be considered harmless in light of what both found to be "overwhelming evidence of Petitioner's identity as one of the perpetrators and of his guilt for the robbery and assaultive crimes for which he was convicted." Because we have determined that Catalfamo's identification testimony was admissible, we pretermit the question of harmless error.