Bernard KELLY, Petitioner-Appellant,

v.

Kenneth T. MCKEE, Warden, Respondent-Appellee.

No. 16-1572

United States Court of Appeals, Sixth Circuit.

Filed January 24, 2017

## ORDER

Bernard Kelly, a Michigan prisoner proceeding pro se, applies for a certificate of appealability (COA) to appeal the district court's judgment denying his 28 U.S.C. § 2254 petition for a writ of habeas corpus.

In 2005, Kelly was convicted of murdering his three-year old daughter, Stefanie Belue, and shooting her two daycare providers, Sherita Griggs and Annette Rice. A jury convicted Kelly of first-degree murder, assault with the intent to murder, and possession of a firearm during the commission of a felony. The trial court sentenced Kelly to life imprisonment without parole for murder and lesser terms of imprisonment for the other crimes. The Michigan Court of Appeals affirmed his convictions and sentence, and the Michigan Supreme Court denied leave to appeal. Kelly filed a § 2254 habeas corpus petition, which the

district court held in abeyance until Kelly could exhaust further issues in the Michigan courts. Kelly filed a motion for state post-conviction relief, which was denied. The Michigan Court of Appeals and Michigan Supreme Court denied leave to appeal. Kelly returned to federal court and filed an amended § 2254 habeas corpus petition, raising thirty-eight claims for relief. In a well-reasoned opinion, the district court denied Kelly's petition on the merits. It also declined to grant a COA. Kelly filed a timely notice of appeal and now seeks a COA in this court.

Of the thirty-eight claims presented in his initial and amended habeas corpus petitions, Kelly seeks a COA for seventeen. He claims that he was denied due process and a fair trial when: (1) the trial court admitted prior bad acts evidence [claim 4R]; (2) the trial court denied him his choice of counsel [claim 1]; (3) the trial court forced him to proceed with trial counsel who had a conflict of interest [claim 2]; (4) the trial court declined to hold a competency hearing [claim 3]; and (5) the prosecutor stated that his motive for the murder was to avoid child support payments [claim 1R].

Kelly also claims that trial counsel rendered ineffective assistance by failing: (6) to timely request and cooperate with an investigator [claim 6R]; (7) to adequately litigate his motion to suppress the victims' identifications [claim 4A]; (8) to object to non-witness statements confirming his identification [claim 4B]; (9) to request an appointed pharmacologist, memory specialist, or doctor to testify to the competency of the victims [claim 4C]; (10) to call the appointed investigator to testify [claim 4E]; (11) to investigate and call a video image recovery expert [claim 4F]; (12) to request bank records of a prosecution witness [claim 4G]; (13) to investigate phone record evidence [claim 4H]; (14) to suppress phone record evidence [claim 4I];

(15) to object to the prosecution's improper use of character evidence [claim 4L(4)]; (16) to object to the prosecution's use of photographs of the deceased victim [claim 4L(5)]; and (17) to prevent the prosecution from admitting evidence of his prior bad acts and to offer rebuttal evidence.

Last, Kelly asks that the following claims be remanded for the district court to provide a reasoned decision: that Kelly was denied due process and a fair trial when the trial court refused to conduct a competency hearing for the victims [claim 3]; and that trial counsel was ineffective for failing: to present evidence of medical disability of critical witnesses [claim 3R]; to adequately litigate his motion to suppress the identification of the victims [claim 4A]; to suppress phone record evidence [claim 4I]; to object to the prosecution's statements during closing [claim 4L(1)]; to object to the prosecution's misstatements during opening and closing [claim 4L(2)]; and to object to the prosecution's mischaracterization of the facts throughout the trial [claim 4L(3)].

A COA may issue when an "applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

Under the Antiterrorism and Effective Death Penalty Act, the district court may not grant habeas relief on a claim that was adjudicated on the merits in state court "unless the state court's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal

law,' meaning Supreme Court precedent, or 'was based on an unreasonable determination of facts in light of the evidence presented' during the state court proceedings." *Railey v. Webb*, 540 F.3d 393, 397 (6th Cir. 2008) (quoting 28 U.S.C. § 2254(d)(1)–(2)). "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## I. DUE PROCESS

### 1. Prior Bad Acts—Claim 4R

■ Kelly claims that the trial court erred by admitting evidence that Kelly reacted angrily when Charity Smith became pregnant with his child, that he threatened to kill Smith and her child if Smith gave birth to the child, that Kelly reacted hostilely to Smith's request for child support, and that Smith suspected that Kelly fired a gun into her apartment, hitting her several times. Kelly argues that this evidence was so prejudicial that its admission rendered his entire trial fundamentally unfair, denying him due process under the Fifth and Fourteenth Amendments. *See Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007). As a matter of state law, the Michigan courts held that "[p]roof of motive . . . is generally relevant, and is probative of the intent necessary for murder as well as the perpetrator's identity." *People v. Kelly*, No. 261936, 2006 WL 3613638, at *2 (Mich. Ct. App. Dec. 12, 2006). "Further, the probative value of the evidence of defendant's strong contempt toward paying child support and from assuming responsibilities as a father was high. . . . The evidence was prejudicial only because it was damaging, not because of its tendency to unfairly inject consider-

ations extraneous to the merits of the case." *Id.* Because there is no Supreme Court precedent precluding "other acts" evidence on constitutional grounds, and because admission of the evidence does not fall within the narrow category of infractions that violate fundamental fairness, *see Dowling v. United States*, 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990), reasonable jurists would not debate the district court's rejection of this claim. *See Bey*, 500 F.3d at 521.

### 2. Choice of Counsel—Claim 1

■ Kelly claims that the trial court violated his Fifth, Sixth, and Fourteenth Amendment rights by appointing his previously retained counsel without conducting a hearing. Relying on *Martel v. Clair*, 565 U.S. 648, 132 S.Ct. 1276, 182 L.Ed.2d 135 (2012), Kelly argues that whenever an accused requests new counsel, the trial court must inquire thoroughly into the factual basis for the defendant's dissatisfaction. Indeed, "courts cannot properly resolve substitution motions without probing why a defendant wants a new lawyer." *Id.* at 1288; *see Benitez v. United States*, 521 F.3d 625, 630-31 (6th Cir. 2008). Foundational to *Martel*'s holding, however, is the assumption that a defendant has brought a motion expressing his or her desire for new counsel. "It is hornbook law that *'[w]hen an indigent defendant makes a timely and good faith motion* requesting that appointed counsel be discharged and new counsel appointed, the trial court clearly has a responsibility to determine the reasons for defendant's dissatisfaction." *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990) (quoting 2 W. LaFave & J. Israel, Criminal Procedure § 11.4 p.36 (1984) (emphasis added)). Here, trial counsel told Kelly that his basis for being unable to continue representing him was Kelly's failure to pay for his services. That

breakdown was rectified by the trial court's decision to shift the financial burden from Kelly to the public by appointing counsel. Still, even after trial counsel was appointed, Kelly remained able to alert the district court to his dissatisfaction with counsel's representation, but did not. Reasonable jurists would not debate the district court's rejection of this claim.

### 3. Conflict of Interest—Claim 2

■ Next, Kelly claims that trial counsel's personal interests were in direct conflict with his. "In order to establish a violation of the Sixth Amendment, a defendant who raise[s] no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). Kelly points to the letter he received from trial counsel outlining the breakdown in the attorney-client relationship as a result of Kelly's failure to compensate him for his services. However, the trial court's decision to appoint counsel and provide additional funds to cover the costs of Kelly's defense remedied this potential financial conflict, and Kelly has failed to show that trial counsel's interests were otherwise in conflict with his interests, or that the alleged conflict had any impact upon his representation. To the extent that Kelly complains of specific instances in which trial counsel rendered ineffective assistance, those claims are addressed below. Because Kelly's claim that trial counsel was burdened by an actual conflict amounts to nothing more than speculation, reasonable jurists would not debate the district court's rejection of this claim.

### 4. Failure to Conduct a Competency Hearing—Claim 3

This claim is addressed in section III.1 below.

### 5. Prosecutor Statements—Claim 1R

■ Next, Kelly claims that the prosecutor's repeated statements that his motive for killing his daughter was to avoid child support payments rendered his trial fundamentally unfair. To be cognizable on habeas review, prosecutorial misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). As discussed previously, the state court determined that evidence that Kelly had murdered his daughter to avoid child support payments and his responsibilities as a father was probative to the issues of motive and identity. It was not unfair for the prosecutor to comment on properly admitted evidence. Reasonable jurists would not debate the district court's rejection of this claim.

## II. INEFFECTIVE ASSISTANCE

Kelly advanced multiple claims that trial counsel rendered ineffective assistance. To establish ineffective assistance of counsel, a petitioner must show both that counsel's performance was deficient and that the deficient performance resulted in prejudice to the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690, 104 S.Ct. 2052. The deferential standards established by *Strickland* and § 2254(d) make habeas review of ineffective-assistance claims "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011). When a case is governed by § 2254(d), "the question is not whether counsel's actions were reasonable . . . [but] whether there is any reasonable

322

argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

### 6. Tardy Investigation / Investigator Cooperation—Claim 6R

 Kelly claims that trial counsel did not obtain an investigator until two weeks before trial, did not meet with the investigator until the following day, and did not aid or cooperate with the investigator, thereby rendering ineffective assistance. "[T]he Sixth Amendment imposes on counsel a duty to investigate, because reasonably effective assistance must be based on professional decisions and informed legal choices can be made only after investigation of options." *Strickland*, 466 U.S. at 680, 104 S.Ct. 2052. However, "[i]f counsel does not conduct a substantial investigation into each of several plausible lines of defense, assistance may nonetheless be effective.... Limitations of time and money ... may force early strategic choices, often based solely on conversations with the defendant and a review of the prosecution's evidence." *Id.* at 681, 104 S.Ct. 2052. Kelly does not claim that counsel was deficient for failing to request an adjournment of trial, nor does he show that he was prejudiced by the timing of trial counsel's investigation. Indeed, the record demonstrates that fault for the delay lies with Kelly's inability to pay his retained counsel. It was not until trial counsel removed this financial obstacle by obtaining a court-appointed investigator and funding for experts that the investigation was able to proceed.

Kelly's claim that trial counsel failed to cooperate with the appointed investigator is based on trial counsel's failure to pursue and raise claims that Kelly argues would have been successful with additional investigation. Kelly does not show that trial counsel and the investigator were unable to cooperate. To the contrary, trial counsel

relied upon the investigator's efforts in cross-examining two of the prosecution's witnesses about possible police interference with their testimony. Reasonable jurists would not debate the district court's resolution of this claim.

### 7. Suppression of Victim Identifications—Claim 4A

Kelly claims that trial counsel rendered ineffective assistance by arguing in his motion for an evidentiary hearing pursuant to *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), that victims Griggs and Rice were incompetent due to medications they were taking for their injuries, not that the identification process was unduly suggestive. Upon discovering that trial counsel was not challenging the identification procedures as unduly suggestive, the trial court denied Kelly's motion.

To determine whether an allegedly suggestive pre-trial identification casts an impermissible taint on a later in-court identification, a court utilizes a two-step evaluation. First, the court determines whether the procedure was unduly suggestive. If the court determines that the identification was unduly suggestive, it then uses five factors set out in *Neil v. Biggers*[, 409 U.S. 188, 197, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972),] to evaluate the totality of the circumstances to determine whether the identification was nevertheless reliable.

*Mills v. Cason*, 572 F.3d 246, 251 (6th Cir. 2009).

 Kelly claims that trial counsel should have argued that the photo lineup used by police was unduly suggestive because he was the only person depicted as bald, clean-shaven, and looking down. He also claims that the identifications at the preliminary examination were unduly suggestive because the preliminary examina-

tion was conducted at the hospital and he was required to appear in chains and prisoner garb. Even assuming that the pretrial identification procedures were unduly suggestive, given the totality of the circumstances, trial counsel could have reasonably concluded that Griggs's and Rice's identifications were reliable. On the day of the murder, Kelly spoke at length with Griggs and Rice at the daycare facility, pretending to be interested in their services. Indeed, Rice had given Kelly a ten to fifteen minute tour of the facility, and Griggs had stood facing Kelly when he cursed at her and shot her in the face. Thus, counsel could reasonably choose not to argue that the witnesses' identifications resulted from unduly suggestive practices. Reasonable jurists would not debate the district court's resolution of this claim.

### 8. Non-Witness Statements—Claim 4B

Kelly also claims that trial counsel rendered ineffective assistance by failing to object to the prosecutor's statement that Rice had positively identified Kelly at the preliminary examination when Rice had stated that she could not identify Kelly at that moment because defense counsel was blocking her view. But because there is a reliable basis for Rice's identification that is independent of the pretrial identification process, Kelly cannot demonstrate that he was prejudiced by trial counsel's failure to object to the prosecutor's statement. *See United States v. Washington*, 714 F.3d 962, 967 (6th Cir. 2013). Reasonable jurists would not debate the district court's rejection of this claim.

### 9. Memory Expert—Claim 4C

Next, Kelly claims that trial counsel rendered ineffective assistance by failing to obtain an expert to testify that medications Griggs and Rice had taken might have undermined the accuracy of their identifi-

cations. Again, the existence of a reliable, independent basis for the witnesses' identifications precludes Kelly from being able to demonstrate that he was prejudiced by trial counsel's alleged deficiency. Reasonable jurists would not debate the district court's resolution of this claim.

### 10. Failure to Call the Investigator— Claim 4E

■ In his amended petition, Kelly faults trial counsel for failing to call the appointed investigator to testify that police officers harassed two of his alibi witnesses into changing their testimony. However, Kelly argues for the first time in his application for a COA that trial counsel was ineffective for failing to object to, investigate, and request an evidentiary hearing as to this issue. Because Kelly did not raise these arguments in the district court, they are not properly before this court. *See Bowling v. Parker*, 344 F.3d 487, 510 n.7 (6th Cir. 2003); *Chandler v. Jones*, 813 F.2d 773, 777 (6th Cir. 1987). In any event, the claim is meritless. Kelly fails to show that he was prejudiced by trial counsel's decision not to call the investigator to testify. As the district court correctly pointed out, trial counsel was provided a full opportunity to cross-examine Kelly's alibi witnesses as to whether police officers harassed them into changing their testimonies, and Kelly has not shown that calling the investigator to testify would have added anything. Reasonable jurists would not debate the district court's resolution of this claim.

### 11. Video Image Recovery Expert— Claim 4F

Although Kelly lists Claim 4F among those for which he seeks a COA, he does not advance an argument in support of the claim, effectively abandoning it. *See Jackson v. United States*, 45 Fed.Appx. 382,

385 (6th Cir. 2002); *Elzy v. United States,* 205 F.3d 882, 886 (6th Cir. 2000). In any event, this claim does not deserve encouragement to proceed further. Kelly proffers no evidence to show that an expert would offer exculpatory testimony or testimony that would impeach the victim's identifications. *See Keith v. Mitchell,* 455 F.3d 662, 672 (6th Cir. 2006).

### 12. Bank Records—Claim 4G

Kelly claims that trial counsel was ineffective for failing to subpoena witness Alvette Madison's bank records. He argues that Madison testified on cross-examination that she was positive that she saw Kelly from a bank parking lot on a Friday when the charged offense occurred on a Tuesday. Kelly faults trial counsel for not corroborating this testimony with her bank statement. But Kelly fails to demonstrate that counsel erred or that he was prejudiced thereby. Trial counsel solicited testimony from the witness that she observed Kelly on a day other than the date of the offense. Thus, trial counsel had already exposed a weakness in the witness' testimony. Kelly has not shown that the strategic decision not to seek out the bank statements, which could refute the favorable testimony he elicited on cross-examination, was so serious that it amounted to trial counsel not functioning as counsel, which is necessary to overcome the strong presumption of reasonable representation. *See Premo v. Moore,* 562 U.S. 115, 121-22, 131 S.Ct. 733, 178 L.Ed.2d 649 (2011). Reasonable jurists would not debate the district court's rejection of this claim.

### 13. Phone Records—Claim 4H, 4I

Next, Kelly argues that trial counsel rendered ineffective assistance when he failed to prove that the prosecution had altered inculpatory phone records. The state court determined that trial counsel was not ineffective because, "[o]f the alleged inaccuracies identified by defendant on appeal, the only ones that are relevant here involve telephone calls between defendant and Lana Evans. But a comparison of the records to Evans's trial testimony fails to establish that the records were inaccurate." *Kelly,* 2006 WL 3613638, at *8. Kelly does not show that the state court clearly misapplied *Strickland* or unreasonably determined the facts in light of the evidence presented at trial. Reasonable jurists would not debate the district court's resolution of this claim.

Similarly, Kelly complains that evidence relied upon by the prosecution to establish that he was in the area of the murder and using his phone was not disclosed in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The Michigan courts determined that *Brady* was not implicated in this case on state law grounds. *See Kelly,* 2006 WL 3613638, at *8. There are three components of a *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice must have ensued. *See Strickler v. Greene,* 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). Kelly has failed to show that the evidence was favorable to his case, that the prosecution suppressed it, or that he has suffered prejudice as a result. Indeed, counsel was provided with Kelly's phone records prior to trial. Reasonable jurists would not debate the district court's rejection of this claim.

### 15. Character Evidence—Claim 4L(4)

Kelly claims that trial counsel rendered ineffective assistance when he failed to object to the testimony of Denise McCloud. McCloud testified that, years

prior to the murder, she served Kelly with papers on behalf of the Friend of the Court, that Kelly grew very angry, and that she was afraid of him as a result. Kelly has failed to demonstrate that he was prejudiced by trial counsel's failure to object. As explained above, the state court found that "the probative value of the evidence of defendant's strong contempt toward paying child support ... was high." *Kelly*, 2006 WL 3613638, at *2–3. Trial counsel is not required to raise meritless objections. *See Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. Reasonable jurists would not debate the district court's rejection of this claim.

### 16. Autopsy Photographs—Claim 4L(5)

Kelly faults trial counsel for failing to object to or request a limiting instruction regarding the autopsy photographs of his deceased daughter. But the photographs were admissible under Michigan law, *see People v. Gayheart*, 285 Mich.App. 202, 776 N.W.2d 330, 346 (2009), and trial counsel will not be found to be ineffective for failing to raise futile objections. *See Strickland*, 466 U.S. at 694, 104 S.Ct. 2052; *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000). Reasonable jurists would not debate the district court's resolution of this claim.

### 17. Charity Smith—Claim 4M

Kelly claims that trial counsel failed to call Tracey Poteat as a witness to rebut the testimony of Charity Smith or play an audio recording of Smith in which Smith threatens harm against Kelly and his family. Kelly argues that this evidence would have diminished Smith's credibility before the jury. But he does not identify how this evidence is in any way exculpatory. Because trial counsel has no obligation to present evidence or testimony that does not exculpate a defendant, *see Millender v.*

*Adams*, 376 F.3d 520, 527 (6th Cir. 2004), reasonable jurists would not debate the district court's resolution of this claim.

### III. ADDITIONAL CLAIMS

Kelly also requests a remand to the district court for further consideration of a number of claims that he argues were not specifically addressed. Kelly claims that he was denied due process and the effective assistance of counsel when: (1) trial counsel failed to present evidence of Griggs's and Rice's medical disabilities at trial [claim 3R]; (2) the trial court declined to hold a competency hearing as to Griggs and Rice [claim 3]; (3) trial counsel failed to suppress Griggs's and Rice's identifications [claim 4A]; (4) trial counsel failed to move to suppress phone records [claim 4I]; (5) trial counsel failed to object to the prosecutor's remarks during closing arguments [claim 4L(1) ]; (6) trial counsel failed to object to the prosecutor's statements during trial [claim 4L(2) ]; and (7) trial counsel failed to object to the prosecutor's statements that were allegedly unsupported by the evidence [claim 4L(3) ]. These claims do not warrant encouragement to proceed further.

### 1. Denial of *Wade* Hearing—Claim 3

Kelly claims that he was denied due process when the trial court denied his motion for a hearing on the issue of Griggs's and Rice's medical disabilities. Kelly argues that he was entitled to a hearing pursuant to *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), to determine whether Griggs and Rice were competent to identify him in light of their medical conditions. Upon learning that counsel was not challenging the identification procedures as unduly suggestive, the trial court declined to proceed with a *Wade* hearing. The state courts held that "[t]he right to a *Wade*

326

hearing stems from a claim that an identification procedure is constitutionally improper." *Kelly*, 2006 WL 3613638, at *3. As the state court properly concluded, it is the jury's function to determine whether Griggs's and Rice's identifications were proper. *See Watkins v. Sowders*, 449 U.S. 341, 101 S.Ct. 654, 66 L.Ed.2d 549 (1981). "Indeed, ... the *only* duty of a jury in cases in which identification evidence has been admitted will often be to assess the reliability of that evidence." *Id.* at 347, 101 S.Ct. 654. Because Kelly does not show that the state courts misapplied clearly established federal law, this claim does not deserve encouragement to proceed further.

### 2. Failure to Present Evidence—Claim 3R

Kelly also claims that trial counsel rendered ineffective assistance by failing to impeach Griggs and Rice with their medical reports. He argues that Griggs and Rice were unable to competently identify him in light of the medications they were taking. Even assuming this to be true, Kelly cannot demonstrate that he suffered prejudice. As indicated above, the record demonstrates that Griggs and Rice possessed an independent basis for their identifications. This claim does not deserve encouragement to proceed further.

### 3. Failure to Suppress—Claim 4A

Kelly's claim that the district court did not decide claim 4A is in error. It has been addressed above. *See supra*, section I.7.

### 4. Failure to Suppress—Claim 4I

Kelly's claim that the district court did not decide claim 4I is in error. It has been addressed above. *See supra*, section I.13.

### 5. Prosecutorial Misconduct—Claim 4L(1)

Kelly claims that trial counsel rendered ineffective assistance by failing to object to the prosecutor's statements during closing arguments that were designed to elicit sympathy for the victim. Kelly objects to the following statements:

Now Stephanie cries out, daddy, you ignored me in life, you will not ignore me in death.

. . .

Look at my face daddy.

. . .

Look at my hand, daddy. I have a defensive wounds on my hand as I vainly tried to put my hand up, my hand that was attached to my 45 pound body, I vainly put my hand up to protect my life from your big muscular power house pumped physique as you attacked me.

. . .

I know it's hard to look at those autopsy photos, I did not relish having to show them to you, but when you think about your discomfort in looking at those autopsy photos, you think about her discomfort. Our discomfort in looking at those photos are nothing to the agony that Stephanie Belue experienced in the last moments of her life at the hands of this man.

. . .

Look at my head daddy. The top of my head has pattern abrasions, contusions, and my head is misshapen, my skull is sort of caved in, my head is sloped downward. Look at me daddy. Look at my pictures. And you didn't see pictures of me at birthday parties with friends and my play sets so you're going to look at these pictures. Look at the picture of my skull. It crushed like a tiny little Easter egg.

. . .

Look at me daddy. You intended to kill me.

. . .

Look at my brain daddy.

. . .

Now, Stefanie says in life I was a pretty little girl. I was practicing to be in my Auntie Fatts wedding, and I said I'm going to be so pretty, but now because of you, my very image makes people cringe and look away. Don't look away. Look at my image. Look at what you have done to me daddy.

. . .

He may have erased her physical presence, but her spirit is here and she is telling you, daddy, you are not going to get away with it.

■ A petitioner must demonstrate that a prosecutor's remarks, taken in the context of the entire trial, were prejudicial and infected his trial with such unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). A prosecutor's remarks are examined in their context. *See Hall v. Vasbinder*, 563 F.3d 222, 234 (6th Cir. 2009). Moreover, the harmless-error standard announced in *Brecht v. Abrahamson*, 507 U.S. 619, 622–23, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) applies to prosecutorial misconduct claims on federal habeas review. *See Bates v. Bell*, 402 F.3d 635, 641 (6th Cir. 2005).

■ These statements tended to elicit sympathy for the victim. They were not based on facts in evidence, insofar as they speculated on the victim's thoughts and feelings. The trial court, however, instructed the jury not to allow sympathy or prejudice to affect its decision. Further, in light of the overwhelming evidence against Kelly, the remarks did not have a "substantial and injurious effect or influence in determining the jury's verdict," and constituted harmless error at most. *See Brecht*, 507 U.S. at 622–23, 113 S.Ct. 1710. Likewise, Kelly cannot show that he suffered prejudice on account of the prosecutor's statements. *See Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. This claim does not warrant encouragement to proceed further.

### 6. Prosecutorial Misconduct—Claim 4L(2)

Kelly also claims that trial counsel rendered ineffective assistance by failing to object to the prosecutor's alleged misstatements that impermissibly shifted to him the burden of proving his alibi defense. Kelly objects to the prosecutor's characterization of his alibi as "false" and a "lie." But Kelly fails to demonstrate that the prosecutor's isolated remarks, when taken in context of the entire trial, were so prejudicial as to infect his trial with such unfairness as to make his conviction a denial of due process. This claim does not warrant encouragement to proceed further.

### 7. Prosecutorial Misconduct—Claim 4L(3)

Finally, Kelly claims that trial counsel rendered ineffective assistance by failing to object to the prosecutor's statements that Kelly had an issue with paying child support for his female children, that Kelly had an issue with women, and that Kelly displayed a guilty mind by fleeing the area. He argues that because there was no evidence adduced at trial to support them, these statements constituted error to which trial counsel should have objected. Considering these comments in the context of the entire trial, Kelly fails to demonstrate that they were prejudicial and infected his trial with such unfairness as to make the resulting conviction a denial of due process. At worst they would constitute harmless error. *See Brecht*, 507 U.S. at 622–23, 113 S.Ct. 1710. Because Kelly suffered harmless error at best, he cannot

328

establish that he suffered prejudice on account of the prosecutor's statements. *See Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. Thus, this claim does not warrant encouragement to proceed further.

We **DENY** the application for a COA.